IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| *ex rel*. NICOLE OLCOTT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 12-CV-605-TCK -CDL |
| ) | |
| SOUTHWEST HOME HEALTH CARE, ) | |
| INC. and DR. ROGER LEE KINNEY, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

Before the Court is the Motion to Determine Damages filed by Relator Plaintiff Nicole Olcott. Doc. 145. Plaintiff seeks an award of a portion of statutory damages pursuant to the False Claims Act and the Stark Law-Anti Kickback Statutes; back pay; attorney's fees; fees and costs, and post-judgment interest. *Id.* No objections or responses to the motion have been filed.

**I. Background**

Olcott is a registered nurse who was employed by defendant Southwest Home Health Care, Inc. ("Southwest") in May and June of 2012. Southwest provided home health care to homebound patients. In her Amended Complaint, she alleges that she spoke out regarding fraudulent practices at Southwest and—as a result—was terminated on June 24, 2012. Doc. 10, First Amended Complaint, ¶16. On February 9, 2018, the United States filed its Complaint in Intervention, but limited its claims to five Southwest patients who were not homebound and therefore did not qualify for Home Health under Medicare. *Id.,* ¶42.

On June 13, 2013, Olcott filed a sworn First Amended Complaint based primarily upon the False Claims Act (FCA"), 31 U.S.C. §3730(b)(1).  Doc. 10.  On February 9, 2018, the United States filed its Complaint in Intervention, but limited its claims to five Southwest patients who were not homebound and did not qualify for Home Health under Medicare. *Id.*, 42.

In October 2018, Olcott issued discovery requests to Southwest.  After Southwest failed to respond to the requests, Olcott filed a motion to compel on February 6, 2019.  Doc. 100.  Southwest did not respond to that motion, and on March 1, 2019, Magistrate Judge Frank McCarthy entered an order directing Southwest's immediate response to the discovery requests.  Doc. 109.  After Southwest still failed to respond to the requests, Olcott filed a Motion for Sanctions and Default Judgment.  Docs. 115,116. On January 9, 2020, after a hearing on Olcott's Motion for Sanctions, Judge McCarthy entered his Report and Recommendation in which he recommended the Court enter partial default judgment against Southwest.  Doc. 128.  On May 28, 2020, the Court entered an order adopting Judge McCarthy's Report and Recommendation, entering partial default judgment in favor of Olcott, and reserving the determination of her damages. Doc. 136.

Meanwhile, on November 26, 2019, the United States and Southwest Health Homecare filed Notice and Motion to Schedule a Hearing, in which they advised the Court that they had reached a settlement, but that Olcott refused to sign the settlement agreement. Doc. 125.  They sought a hearing on the proposed settlement. *Id.*

On June 30, 2020, the Court held a hearing on the proposed settlement and, over Olcott's objection, approved the settlement agreement.  Doc. 141.

Pursuant to the False Claims Act and the Stark Law-Anti Kickback Statutes ("Stark Law" or "Stark Act"), Plaintiff Olcott now seeks an award of damages, attorney's fees and costs on her

2

behalf against Southwest based on the Court's entry of the default judgment against defendants. Doc. 145.

## II. Analysis

Plaintiff asserts she is entitled to statutory damages under the False Claims Act and the Stark Law-Anti Kickback Statutes; back pay for wrongful termination; reasonable attorney fees and expenses; and post-judgment interest.

### A. Statutory Damages

In her Amended Complaint, Plaintiff alleged violations of the False Claims Act, 31 U.S.C. §3729(a)(1)(A)-(C), and the Stark Law-Anti Kickback Statutes, 42 U.S.C. §1395nn(g)(3), both of which were implemented in order to deter fraud against the government. Under the False Claims Act, a claim is false if it is for unnecessary services or services not provided, or if "it has been tainted by some underlying statutory, regulatory, or contractual violation made in connection with that claim, which renders the claim ineligible for reimbursement." *U.S. ex rel. Kester v. Novartis Pharm. Corp.*, 41 F.Up.3d 323, 329 (S.D.N.Y. 2014); 42 U.S.C. §1320a-7b(g). The Stark Law prohibits a physician from referring a patient to an entity for receipt of designated health services if the physician has a financial relationship with the entity. 41 U.S.C. §1395nn.

#### 1. False Claims Act

The FCA provides:

> If the Government does not proceed with an action under this section, the person bringing the action or settling the claim shall receive an amount which the court decides is reasonable for collecting the civil penalty and damages. The amount shall be not less than 25 percent and not more than 30 percent of the proceeds of the action or settlement and shall be paid out of such proceeds. Such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. All such expense, fees and costs shall be awarded against the defendant.

*Id.*

The United States recovered $5,000 each from settling defendants for three patient claims submitted to Medicare— Patient #11, L.E.; Patient #19, J.D.L.; and Patient #35, V.S.—for a total of $15,000 in False Claims Act violations. It recovered a $15,000 penalty from settling defendants for one patient— Patient #23, M.M.—for Stark Act Damages. Plaintiff asserts that due to her contribution, she is entitled to 30 percent of the damages collected, plus reasonable attorneys' fees and costs.

Three factors are to be considered in determining the relator's share of damages: "(i) the significance of the information provided to the government, (ii) the contribution of the person bringing the action to the result obtained, and (iii) whether the information that formed the basis for the suit was known to the government." *U.S. ex rel. DRC, Inc. v. Custer Battles, LLC,* 2009 WL 3756343, at *2. Under the statute, an award of fees, costs and expenses is mandatory, and not a matter of discretion vested in the court. *Shaw v. AAA Engineering & Drafting, Inc.*, 213 F.3d 538, 544 (10th Cir. 2000). "Two of the FCA's main goals are to enhance the government's ability to recover losses resulting from fraud and to encourage individuals who know of government fraud to come forward with that information." *Id.* (internal citations omitted).

In her first Amended Complaint, the Relator alleged several examples of fraudulent records Southwest created to support enhanced reimbursement. Doc. 10.[1] Specifically, the Amended Complaint alleges:

- **Patient L.E. #11.** When Relator visited patient L.E. #11 in June of 2012, she observed that the last RN who had visited the patient, Director of Nursing for Southwest, Debra Deasy, had made a progress note in the chart indicating, "Instructed patient on depression. Patient verbalized understanding." L.E.'s primary diagnosis was Alzheimer's, and Relator personally observed that L.E. was almost completely nonverbal and unable to make a sensible statement. Other

---

[1] Although the United States and Southwest entered into a cash settlement based on five of the Relator's allegations, the Relator retained the right to proceed with the claims of Patient L.E. #11, Patient J.D.L. #19 and Patient V.S. #35.

4

Kinney records Deasy created confirm this is L.E.'s condition. Since L.E. had been a Southwest patient for more than five years and was a member of the Southwest Administrator's family, it is clear that Southwest and Dr. Kinney, her PCP, were aware of the falsity of this record. *Id.*, ¶38(H).

- **Patient J.D.L. #19.** On June 7, 2012, Relator visited patient J.D.L. #19, whose Plan of Care states he is diabetic. Patient stated he is not. He lives with his granddaughter, who is a nurse. He said he has pain issues, but they have not been addressed with a doctor and non-pharmacological measures have not been taught to the patient or the caregiver. Patient should have been discharged, as all that was being done in home for patient was taking vital signs at each visit. *Id.*, ¶38(L)(4).

- **Patient V.S. #35.** Relator visited patient V.S. #35 on June 12, 2012. The May 23, 2012 chart states that lungs are still diminished, but there was no call to the doctor. When Relator visited V.S. on June 5, 2012, the lung status was poor, so Relator contacted Dr. Kinney's nurse. The Patient was positive for lung cancer and pleural effusion, so she was sent to the hospital for thoracentesis. On June 18, 2012 the patient was "resume post-hospital," but should have gone to Hospice after her diagnosis of terminal cancer. *Id.*, ¶38(L)(13).

Plaintiff filed the action in 2012, and—although the United States filed a Notice of Election to Intervene in Part and Decline in Part on December 11, 2017, and a Complaint in Intervention in the case on February 9, 2018 (Docs. 37, 42)—it is clear that Plaintiff's pursuit of the case was instrumental in exposing the relationship between Southwest and Dr Kinney. Accordingly, the Court concludes that, pursuant to the FCA, Plaintiff is entitled to receive 30 percent of the damages recovered by the United States, *i.e.*, $3000.

### 2. Stark Act – Anti Kickback Statutes

Plaintiff also seeks a portion of settlement proceeds pursuant to the Stark Act, which prohibits a physician who has a financial relationship with a health care facility or entity from referring a patient to that entity. 42 U.S.C. §1395nn(g). The Stark Act provides, in pertinent part:

> Any person that presents or causes to be presented a bill or a claim for a service that such person knows or should know is for a service for which payment may not be made under paragraph (1) or for which a refund has not been made under paragraph (2) shall be subject to a civil money penalty of not more than $15,000 for each such service.

42 U.S.C. §1395nn(g)(3);

> Any physician or other entity that enters into an arrangement or scheme (such as a cross-referral arrangement) which the physician or entity knows or should know has a principal purpose of assuring referrals by the physician to a particular entity which, if the physician directly made referrals to such entity, would be in violation of this section, shall be subject to a civil penalty of not more than $100,000 for each such arrangement or scheme.

42 U.S.C. §1395nn(g)(4).

The Court previously granted the Relator partial default judgment establishing that Southwest is liable to the Relator for damages and penalties in an amount to be established. Doc. 136. The evidence presented by Plaintiff establishes that Dr. Kinney—who was the Medical Director of Southwest—created an initial Plan of Care for Patient #23 (M.M.) and referred the patient to Southwest for home health services in violation of the Stark Act. Furthermore, Dr. Kinney recertified plans of care for patients #30 J.Z, #31 W.S., #33 W.S., #35 V.S., #37 L.S., #39 L.T. and #11 L.E., thereby referring each of them to Southwest for an additional 60 days of home health care. Because it requires two parties to enter into a conspiracy to create a kickback scheme and to complete an illegal kickback, Southwest is also subject to penalties for its participation pursuant to 42 U.S.C. §1395nn(g)(3).

Additionally, because of the number of patients Dr. Kinney continuously re-certified, it is clear that he and Southwest had entered into an illegal conspiracy to keep Southwest patients on home health care when they should not have been. Accordingly, pursuant to 42 U.S.C. §1395nn(g)(4), the conspiracy is subject to a $100,000 penalty.

Finally, the Relator is entitled to a percentage of any settlement proceeds recovered by the government pursuant to 31 U.S.C. §3730(d)(2), which provides:

> If the Government does not proceed with an action under this section, the person bringing the action or settling the claim shall receive an amount which the court decides is reasonable for collecting the civil penalty and damages. The amount

> shall be not less than 25 percent and not more than 30 percent of the proceeds of the action or settlement and shall be paid out of such proceeds. Such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and cost. All such expenses, fees, and costs shall be awarded against the defendant.

Factors to be considered by the Court in determining whether and how much to award a relator in excess of the 25 percent minimum include, *inter alia*: "(i) the significance of the information provided to the government, (ii) the contribution of the person bringing the action to the result obtained, and (iii) whether the information that formed the basis for the suit was known to the government." *U.S. ex rel. DRC, Inc. v. Custer Battles, LLC*, 2009 WL 3756343, at *2 (E.D. Va. Oct. 14, 2009) (citing S.Rep. No. 99-345 at 28 (1986)).

In this *qui tam* action, the Relator's contributions to the ultimate recovery by the government were significant. Plaintiff filed this case in 2012, and although the United States intervened in late 2019, the Relator carried the laboring oar throughout the litigation, ultimately obtaining the partial default judgment against the defendants.

Based on Plaintiff's role in this case, the Court concludes that she is entitled to receive 30 percent—*i.e.* $15,000—of the of proceeds obtained by the United States in its settlement with Southwest.

### B. Back Pay

The FCA provides that any employee who is wrongfully terminated in retaliation for reporting illegal activity is entitled to reinstatement with the same seniority status that the employee would have had but for the discrimination, and two times the amount of back pay, interest on the back pay, and compensation for any special damages sustained. 31 U.S.C. §3730(h)(2). Under the statute, back pay is to be doubled first, before consideration of any mitigating factors. *Id.* The prevailing plaintiff is entitled to "interest on the back pay." *Id.*

Plaintiff worked for Southwest from June 5, 2012 to June 24, 2012, for a total of 14 work days, before she was terminated. Ex. 1, 2012 W2 form. Accordingly, she made approximately $132 per day during her tenure there. Based on these figures, and assuming she would have worked 110 days for the remainder of 2012, and 250 days a year for years 2013 through 2020, for a total of 2,110 days, her total lost wages would be $278,520. Multiplied by two, her lost wages would total $557,040.00. *Id.*, Ex. 2. From 2012 through 2019, Plaintiff worked for a number of home health care businesses, earning a total of $150,153.93 in mitigation of her loss. Accordingly, her total lost wages amount to $406,886.07.

**C. Attorney Fees and Costs**

Pursuant to 31 U.S.C. 3730(d)(1)-(2), a successful relator is also entitled to an award of "reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs." *Shaw v. AAA Engineering & Drafting, Inc.*, 213 F.3d 538, 544. The award of fees, costs and expenses is mandatory. *Id.*

Plaintiff seeks costs totaling $4,763.25 ($3,772.50 expended by Smolen Law, PLLC and $990 expended by H.L. Holtmann, P.C.). The Court finds these costs to be reasonable.

Plaintiff seeks attorney fees of $400 per hour for Donald Smolen, II for 17 hours, for a total of $6,800; $400 per hour for Skip Holtmann, for 507.5 hours, for a total of $203,000; and $250 per hour for Jack Warren for 84.75 hours, for a total of $21,187.50. The Court concludes that the $250 hour rate for Jack Warren for 84.75 hours to be reasonable. However, the $400 per hour rate charged by Smolen and Holtmann is excessive, and therefore, the Court orders that the rates for both attorneys be reduced to $350 per hour. The Court finds that the number of hours expended by Holtmann is reasonable. But with three separate attorneys billing hours on this case, the Court

8

concludes that the hours reported by Smolen are redundant, and therefore finds that he is entitled to reimbursement for only one hour of time.

Accordingly, the Court grants Plaintiff's motion for recovery of attorney fees as follows:

Donald Smolen, II:   $350 per hour for 1 Hour—$350.00
Skip Holtmann:        $350 per hour for 507.5 Hours—$177,625.00
Jack Warren:          $250 per hour for 84.75 Hours—$21,187.50

Total Attorney Fees:  $199,162.50.

### B. Costs

Plaintiff seeks an award of costs of $3,772.50 to Smolen Law, PLLC and $990.75 to H.L. Holtmann, P.C. The Court has reviewed costs incurred in this case by each firm, and concludes the amounts requested are for reasonable and necessary expenditures. Accordingly, the Court grants Plaintiff's motion and awards costs of $3,772.50 to the Smolen firm and $990.75 to H.L. Holtmann, P.C. for a total award of $4,763.25.

### III. Conclusion

Plaintiff's Motion to Determine Damages is hereby granted, as set forth above.

ENTERED this 29th day of September, 2021.

TERENCE C. KERN
United States District Judge